1   RICHARD H. GOLUBOW – State Bar No. 160434
    rgolubow@winthropcouchot.com
2   PAYAM KHODADADI – State Bar No. 239906
    payam@winthropcouchot.com
3   **WINTHROP COUCHOT**
4   **PROFESSIONAL CORPORATION**
    660 Newport Center Drive, Suite 400
5   Newport Beach, CA 92660
    Telephone:  (949) 720-4100
6   Facsimile:  (949) 720-4111

7
    General Insolvency Counsel for
8   J. Michael Issa, Chapter 11 Trustee

9

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                  **SANTA ANA DIVISION**

13

14  In re:                                  Case No. 8-08-13065-TA

15  ZX AUTOMOBILE COMPANY OF NORTH          (Jointly Administered with
                                            Case No. 8:08-13876-TA)
16  AMERICA, INC.
                                            Chapter 11 Proceedings
17  ☐       ZX AUTOMOBILE COMPANY OF
            NORTH AMERICA, INC.             **MOTION FOR ORDER:**
18  ☐       CHINA AMERICA COOPERATIVE       **(1)   ALLOWING ADMINISTRATIVE
            AUTOMOTIVE, INC.                EXPENSE PRIORITY CLAIM PURSUANT
19  ☒       Both Debtors                    TO 11 U.S.C. § 503; AND
                                            (2)   COMPROMISE OF
20                                          CONTROVERSIES PURSUANT TO
                                            FEDERAL RULE OF BANKRUPTCY
21              Debtors.                    PROCEDURE 9019; MEMORANDUM OF
                                            POINTS AND AUTHORITIES**
22
                                            **[DECLARATION OF J. MICHAEL ISSA IN
23                                          SUPPORT THEREOF FILED
                                            CONCURRENTLY  HEREWITH]**
24
                                            **DATE:**      December 23, 2009
25                                          **TIME:**      11:00 AM
                                            **PLACE:**     Courtroom 5B
26                                                         411 West Fourth Street
27                                                         Santa Ana, California 92701

28

1  **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES**

2  **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND**

3  **PARTIES-IN-INTEREST:**

4      J. Michael Issa, the Chapter 11 Trustee ("Trustee") of the estates of China America

5  Cooperative Automotive, Inc., and ZX Automobile Company of North America Inc. (collectively,

6  the "Estates" or the "Debtors") submits this Motion For Order: (1) Allowing Administrative

7  Expense Priority Claim Pursuant To 11 U.S.C. § 503; and (2) Compromise Of Controversies

8  Pursuant To Federal Rule Of Bankruptcy Procedure 9019 ("Motion"), the attached Declaration of

9  J. Michael Issa (the "Issa Decl."), and the following memorandum of points and authorities in

10  support:

11  **MEMORANDUM OF POINTS AND AUTHORITIES**

12  **I.**

13  **INTRODUCTION**

14      The Petitioning Creditors assert substantial administrative expense claims against the

15  Estates based on the services provided by their law firms.  Specifically, the law firms of Weiland,

16  Golden, Smiley, Wang Ekvall & Strok, LLP ("Weiland Golden"), the Michaels Law Group

17  ("Michaels") and Sills Cummis & Gross P.C. ("Sills Cummis") (together, the "Firms") have

18  provided valuable services as counsel for the Petitioning Creditors which benefited the bankruptcy

19  estates of China America Cooperative Automotive, Inc., and ZX Automobile Company of North

20  America Inc., as described in detail below.

21      The Petitioning Creditors assert that they have provided extraordinary benefits for the

22  creditors of the Debtors, and have incurred a substantial burden in fees and costs while providing

23  these benefits for the creditors.  The Petitioning Creditors have requested administrative expense

24  treatment for the $600,000.00 in fees and out-of-pocket expenses incurred in rendering these

25  beneficial services.  Pursuant to the compromise with the Trustee that is the subject of this Motion,

26  Petitioning Creditors are willing to accept the reduced amount of $350,000.00 as payment in full

27  from the Estates on account of the administrative claims.[1]

28

---

[1] This $600,000.00 amount does not include all fees incurred by the Firms, but only those related to services that benefited the Estates.

## II.

## STATEMENT OF FACTS

### A.    Thomason Distribution Agreement

On or about January 26, 2006, China America Cooperative Automotive, Inc. ("Chamco") and ZX Automobile Company of North America, Inc. ("ZXNA") signed an exclusive importation, marketing, sales and distribution agreement (the "Chinese Auto Distribution Agreement") with Hebei Zhongxing Automobile Co., Ltd. and Zhongxing Tian Ye Ke Che Company, Ltd. ("ZX China").  Pursuant to the Chinese Auto Distribution Agreement, Chamco and ZXNA were granted the exclusive right to import, market, sell, distribute, and assemble ZX China automotive parts in North America.

On December 29, 2007, ZXNA and ZXAuto North America Distribution Company signed a distribution agreement with Thomason Auto Group, LLC ("Thomason") for a 28% interest in a company which was to be the exclusive distributor of ZX China manufactured vehicles in the western United States (the "Thomason Distribution Agreement").  Under the Thomason Distribution Agreement, Thomason agreed to pay a total of $10 million for a 28% interest in ZXAuto West, the entity formed pursuant to said agreement.  Thomason agreed to pay $10 million to ZXAuto NA for its ownership rights in ZXAuto West in two installments: the sum of $6 million payable upon execution of the agreement, and approximately $4 million when ZX China manufactured cars were actually delivered to the United States ready for sale to consumers.  The Thomason Distribution Agreement further provided that Thomason "shall be in charge of the day-to-day management of 'ZXAUTO WEST,'" may be one of five "managing" members of the limited liability company, and is required to place orders for ZXAuto West directly with the Chinese manufacturers.  On January 4, 2008, Thomason paid the sum of $6 million; however, the $4 million balance was not paid.

### B.    Involuntary Bankruptcy Petitions

On June 3, 2008, Michaels filed an involuntary bankruptcy petition under chapter 7 of title 11 of the United States Code against ZXNA.  The Petition was later joined by Mario Medina, William Tally, Thomas Del Franco, Steven Saleen, and Tech Co.

1    On July 7, 2008, an involuntary petition under chapter 7 of the Bankruptcy Code was filed

2    in the Bankruptcy Court against ZXNA's parent company, Chamco, pursuant to 28 U.S.C.

3    § 1408(2) (together, the "Petitions"), by petitioning creditors Rodger Cornish, Axel Catton and

4    Ozair Niazi, which was subsequently joined by claimants Alex Miskov, Alexander Keeler, Jack

5    Pitluk, Martin Karo, Albert Meneses, Stewart Kluss, Sandy Keeler, Rick Kalika, Michael Ross,

6    Mario Feria, Leonora McClure, Tech Co., and William Larkin.

7    The purpose of the filing of the Petitions was to effect an orderly liquidation of the assets,

8    a distribution to creditors pursuant to the priority scheme set forth in the Bankruptcy Code, and to

9    allow creditors to receive the benefits of the protections of the Bankruptcy Code and the

10    supervision of the Bankruptcy Court.

11    **C.    New Jersey Litigation and Appointment of Temporary Special Fiscal**

12    **Agent**

13    On March 3, 2008, Mario R. Feria, Jack Pitluk, Martin H. Karo, Steve Saleen, William

14    Tally, Thomas Del Franco, Alex Miskov, Richard Kalika, and Alexander Keeler (together, "Feria

15    Plaintiffs"), individually and on behalf of Chamco, filed an action in New Jersey Superior Court of

16    Morris County: Chancery Division ("New Jersey Court") against Edward Michael Daspin

17    ("Daspin"), Joan Daspin, William L. Pollack, Sam Tropello, Ronald A. Stella, Bradford Shaffer,

18    Michelle Shaffer, the 1st Capital Corporation, Capital Corporation of America a/k/a Capital

19    Corporation a/k/a Capcorp, Daspin & Co. Merchant Bank Holding Co., Property Development

20    Group, LLC a/k/a Properties Development Group, LLC (together, "Daspin Defendants"), alleging

21    fraud, constructive fraud, conversion, breach of fiduciary duty and covenants of good faith and fair

22    dealing, abuse of control, unjust enrichments, and numerous other claims.  On March 3, 2008,

23    Thomason filed an action ("Thomason Action") in the New Jersey Court against Chamco, ZXNA,

24    and Daspin Defendants the 1st Capital Corporation, Daspin & Co., Merchant Bank Holding Co.,

25    Edward Michael Daspin, Joan Daspin, and Ronald A. Stella alleging the following claims: fraud in

26    the inducement; unjust enrichment; conversion; and constructive trust.

27    On March 31, 2008, certain Daspin Defendants, allegedly on behalf of Chamco and

28    ZXNA, filed a retaliatory action in the New Jersey Court ("Daspin Action") against the Feria

1    plaintiffs, Scott Thomason, Thomason Auto Group, and seven other employees.  On August 14,

2    2008, Thomason filed a second suit against the Feria group.  The Feria Action, Thomason Actions,

3    and Daspin Action are referred to as the "New Jersey Litigation."

4        As of the dates of the bankruptcy filings, both ZXNA and Chamco had been administered

5    by Gerald C. Escala (the "Fiscal Agent") who was appointed by the New Jersey Court as

6    temporary special fiscal agent and authorized under applicable law and the order appointing him,

7    among other things, to exercise all powers of the board of directors and officers of Chamco and

8    ZXNA to the extent necessary to manage the affairs of the corporations in the best interests of its

9    creditors and shareholders.

10        **D.    <u>Motion to Dismiss</u>**

11        On September 25, 2008, after filing the involuntary bankruptcy petitions and during the

12    tenure of the Fiscal Agent, Thomason filed a motion requesting        dismissal of the Debtors'

13    bankruptcy cases, or alternatively that venue of both cases be transferred to a bankruptcy court in

14    New Jersey ("Dismissal Motion").  The Daspin Group filed a joinder to the Dismissal Motion.

15    The Dismissal Motion was originally scheduled to be heard on October 29, 2008, and has been

16    continued several times to allow initially for the Petitioning Creditors, and now the Trustee, on the

17    one hand, and Thomason, on the other hand, to pursue a consensual resolution of their differences

18    including release of the approximate $3.5 million in monies that remain restrained since March 3,

19    2008.

20        **E.    <u>Settlement</u>**

21        After vigorously opposing the entry of orders for relief under chapter 7 for ZXNA and

22    Chamco on the grounds, among other things, that the filings were effected as a litigation strategy

23    in order to change the forum of litigation between two competing groups consisting of

24    shareholders and other persons who have, or previously had, managerial rights in Chamco, the

25    Fiscal Agent concluded, with the advice of his counsel, that the financial situation of Chamco and

26    ZXNA warranted the entry of orders for relief under chapter 11 of the Bankruptcy Code and the

27    opportunity for the companies to formulate a reorganization plan which satisfies section 1129 of

28    the Bankruptcy Code.  Therefore, the Fiscal Agent determined, in his business judgment, to settle

the involuntary filings against Chamco and ZXNA pursuant to a motion to approve compromise of controversy ("Settlement Motion") filed in the ZXNA and Chamco cases.  Pursuant to discussions with the Office of the United States Trustee, the settlement agreement ("Settlement Agreement") was modified to provide for the appointment of J. Michael Issa ("Issa") as the chapter 11 trustee of the Chamco and ZXNA Estates.  After hearings on the Settlement Motion were conducted on October 6, 2008, and November 19, 2008, the settlement was approved pursuant to the orders entered December 23, 2008, and orders for relief under chapter 11 were entered.  Weiland Golden and Michaels negotiated the settlement and assisted in the preparation of the Settlement Motion and responses to objections to the Settlement Motion.

F.    **Appointment of the Chapter 11 Trustee**

On January 9, 2009, Issa was appointed the chapter 11 trustee of the Chamco and ZXNA Estates.  *See* Issa Decl., ¶ 2.

## III.

## LEGAL ANALYSIS

A.    **The Petitioning Creditors are Entitled to an Allowed Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(3)(A), (D) and (b)(4)**

The Petitioning Creditors seek an administrative claim for professional services rendered and costs incurred by the Firms in connection with filing the Petitions.

Section 503(b)(3)(D) provides in pertinent part:

> After notice and a hearing, there shall be allowed administrative expenses other than claims allowed under § 502(f) of this title, including – (3)The actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
>
> (A)  a creditor that files a petition under section 303 of this title . . .
>
> (D)  A creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under § 1102 of this title, in making a substantial contribution in a case under Chapter 9 or 11 of this title.

11 U.S.C. § 503(b)(3)(D).

Section 503(b)(4) authorizes the Court to allow as an administrative expense:

1
2
3

> The reasonable compensation for professional services rendered by
> attorney whose expense is allowable under [section 503(b)(3)] . . .
> and reimbursement for actual necessary expenses incurred by such
> attorney.

11 U.S.C. § 503(b)(4).

As the Ninth Circuit explained in *In re Downtown Investment Club III*, 89 B.R. 59

(B.A.P. 9th Cir. 1988), section 503(b)(4) authorizes compensation for legal fees and expenses

incurred by creditors which are deemed allowable under section 503(b)(3), because otherwise,

creditor participation would be discouraged. *Id.* at 64. Courts concur that "[t]he policy aim of

such compensation [under 11 U.S.C. §§ 503(b)(3)(D) and (4)] is to promote meaningful

participation in the reorganization process. . . concomitant with the aim of creditor participation is

the compensation for counsel to creditors." *In re Richton International Corporation*, 15 B.R. 854,

855 (Bankr. S.D.N.Y. 1981), *citing In re National Lock Co.*, 82 F.2d 600 (7th Cir. 1936) and

*National City Bank v. Saldana Crosas Realty Corp.*, 86 F.2d 923 (1st Cir. 1936).

Pursuant to section 503(b)(3)(D), a creditor is entitled to an allowed administrative

expense claim if the creditor provided a "substantial contribution" to the Debtor's estate. 11

U.S.C. §503(b)(3)(D). Although the term "substantial contribution" is not specifically defined by

the Bankruptcy Code, courts have noted that the term derives from Chapter X of the Bankruptcy

Code, and have defined "substantial contribution" to mean:

> Services. . . which foster and enhance, rather than retard or interrupt
> the progress of reorganization. . . . Those services which are
> provided solely for the client-as-creditor, such as those services
> rendered in prosecuting a creditor's claim, are not compensable.
> [Compensable services] are those which facilitated the progress of
> these cases. . . . Put another way, services must provide a
> "demonstrable benefit to the debtors' estate, [or] the creditors. . . in
> order to be compensable." *In re D.W.G.K. Restaurants, Inc.*, 84
> B.R. 684, 689 (Bankr. S.D. Cal. 1988) (internal citations omitted).

In order to qualify as a "substantial contribution," a creditor's efforts must have facilitated

the progress of a debtor's reorganization. However, courts have not set the bar so high as to

require that a creditor's contribution lead to the confirmation of a plan of reorganization in order to

be compensable under 11 U.S.C. §503(b)(3)(D). *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684,

689 (Bankr. S.D. Cal. 1988). Additionally, courts have noted that a creditor's motive in taking

actions that benefit the estate have little relevance in determining whether a creditor made a

1   "substantial contribution" within the meaning of 11 U.S.C. §503(b)(3)(D).  *In re Celotex Corp.*,

2   227 F.3d 1336, 1339 (11th Cir. 2000).  Rather, in order to qualify as a "substantial contribution," a

3   creditor's efforts must have provided a significant and demonstrable benefit to the bankruptcy

4   estate.  *In re D.W.G.K. Restaurants, Inc., supra*, 84 B.R. at 689.  As such, the principal test for

5   determining whether a compensable contribution has been made is the extent of benefits to the

6   estate.  *See In re Sentinel Management Group, Inc.*, 404 B.R. 488, 494 (Bankr. N.D. Ill., 2009); *In*

7   *re Cellular 101, Inc.*, 377 F.3d 1092, 1096 (9th Cir. 2004); *In re Christian Life Ctr.*, 821 F.2d

8   1370, 1373 (9th Cir. 1987).  Courts determine whether this test has been met on a case-by-case

9   basis.  *In re Pow Wow River Campground, Inc.*, 296 B.R. 81, 85 (Bankr. D.N.H. 2003).

10          1.      **The Petitioning Creditors made a Substantial Contribution to the**

11                  **Estates within the meaning of 11 U.S.C. § 503(b)(3)(D)**

12          The Petitioning Creditors efforts in the instant case, produced a direct, significant, and

13   demonstrable benefit to the Debtors' Estates, and sections 503(b)(3)(D) and 503(b)(4) provide that

14   a creditor or equity security holder who makes a substantial contribution to a Chapter 11 case, and

15   such creditor's or equity security holder's attorney and accountant, are entitled to reasonable

16   compensation and reimbursement of expenses.

17          Here, the efforts of the Petitioning Creditors have resulted in such a dramatic improvement

18   in the amounts to be paid to creditors that arguably no further analysis of whether an

19   administrative expense claim is allowed is necessary.  However, even applying the traditional

20   factors, the Petitioning Creditors efforts are compensable as administrative expenses.  For

21   example, the Petitioning Creditors efforts to have a Chapter 11 Trustee appointed are compensable

22   as administrative expenses because this appointment served to speed the reorganization effort, did

23   not benefit the Petitioning Creditors over other creditors, and did not duplicate efforts of the

24   Debtors or of a committee.  The following is a summary of the Firms' services as counsel for the

25   Petitioning Creditors which benefited the bankruptcy Estates:

26                  a)      The Filing of the Involuntary Bankruptcy Petition

27          Weiland Golden reviewed documents and researched and analyzed various issues

28   regarding the filing of an involuntary petition, including venue and bankruptcy issues, and

corporate status in New Jersey and California.  Weiland Golden, along with Michaels, also spent

considerable time developing involuntary and litigation strategies.  In addition, Weiland Golden

reviewed the involuntary petition filed by Rodger Cornish, Axel Catton and Ozair Niazi, and

prepared and filed the joinders of the Petitioning Creditors and Albert Meneses and William

Larkin to the involuntary petitions.  Weiland Golden also prepared *pro hac vice* applications for

Andrew Sherman in the Chamco and ZXNA cases.

b)        <u>Opposition to the Motion to Dismiss</u>

Weiland Golden, along with Michaels and Sills Cummis, spent time reviewing the

Dismissal Motion, researching dismissal and venue issues, and preparing and filing opposition to

the motion.

c)        <u>Estate Litigation</u>

Weiland Golden and Michaels reviewed and analyzed facts and potential litigation claims

the Estates may have.

d)        <u>Representation in the New Jersey Litigation</u>

Sills Cummis represented the Petitioning Creditors with respect to bankruptcy issues in

connection with the New Jersey Litigation.  Such issues included venue and the effect of the

bankruptcy proceedings on the New Jersey Litigation including, in particular, on the obligations

and duties of the Fiscal Agent.  Sills Cummis analyzed these issues and prepared documents filed

in the New Jersey Litigation and appeared at hearings.  Weiland Golden and Michaels assisted

Sills Cummis in connection with these issues.

e)        <u>Settlement Negotiations with Chamco, ZXNA, and the</u>
<u>Petitioning Creditors</u>

Weiland Golden and Michaels formulated and negotiated the settlement among Chamco,

ZXNA, and the Petitioning Creditors to resolve the involuntary petitions filed against ZXNA and

Chamco, and prepared the Settlement Agreement among the parties.  The salient terms of the

Settlement Agreement provide for entry of orders for relief under chapter 11 in the ZXNA and

Chamco cases and authorize and require Issa to operate the businesses of ZXNA and Chamco as

debtors-in-possession.  The Settlement Agreement further provides that, upon approval of the

1    Settlement Agreement, the preliminary injunction order is vacated.  Consistent therewith, it

2    provides an opportunity for parties in interest to propose a plan of reorganization or orderly

3    liquidation.  The Settlement Agreement also provides that the Petitioning Creditors will not file a

4    motion to convert the cases to a chapter 7 liquidation or a motion for the appointment of a trustee

5    any sooner than sixty (60) days after entry of orders for relief.  The Settlement Agreement fully

6    resolves certain then-pending motions.  Additionally, the Settlement Agreement preserves for the

7    benefit of creditors certain causes of action against the Daspin Group and the Saleen Group.

8         Weiland Golden and Michaels participated in extensive negotiations through numerous

9    telephone calls and a face-to-face meeting in New Jersey in August 2008 with Judge Escala, his

10   counsel John DiIorio, and certain of the petitioning creditors.  Weiland Golden's and Michaels'

11   efforts were instrumental in providing Judge Escala with the information necessary for him to

12   confirm that bankruptcies and a trustee would be in the best interest of creditors and the estates.  In

13   addition, Weiland Golden, with the assistance of Michaels, also prepared and filed the reply to the

14   opposition to the Settlement Motion.  Moreover, Weiland Golden prepared and filed the joint

15   joinder in the Alleged Debtor's motion for entry of an order approving the Settlement Agreement,

16   and prepared the motion for order shortening time for notice of hearing on the Settlement Motion.

17                     f)        Settlement Negotiations with Thomason

18        Prior to the Trustee's appointment, Weiland Golden and Michaels formulated and began

19   negotiating a settlement with Thomason.  Such negotiations included a face-to-face meeting with

20   Thomason and his counsel in Portland, Oregon on October 3, 2008, and follow-up negotiations.

21   The agreement (the "Thomason Settlement Agreement") that was finalized and was approved by

22   the Court on November 9, 2009, has the same structure and has substantially the same terms as

23   what was proposed and negotiated by Weiland Golden and Michaels.[2]

24

25   ─────────────────

[2] The salient terms of the Thomason Settlement Agreement provide that the Trustee will pay or release to Thomason
the sum of $2.5 million, and will release any claims that the Debtor's Estates have or may have to $250,000 held in a
26   Bank of the West bank account in the name of Chamco Distribution West, LLC. In return for the settlement payment
of $2.5 million, Thomason will withdraw the Dismissal Motion and file a dismissal with prejudice of the Debtors from
27   the Thomason Action. The Thomason Action will be automatically assigned to the Trustee. Thomason will be entitled
to an allowed claim against the Debtor's Estates in the amount of $2.5 million and to receive its pro rata share of any
distribution to creditors. Upon request by the Trustee, Thomason will lend the Estates an amount not to exceed
28   $250,000, subject to certain terms, to fund partial contingent fee litigation to be pursued by the Trustee on behalf of
the Estates against parties other than Thomason or Scott Thomas. In return for the loan, Thomas shall be granted a

Due to the efforts of the Firms as attorneys for the Petitioning Creditors, the assets of the Estate were preserved for all creditors, and a chapter 11 trustee was appointed to administer the Estates pursuant to the provisions of the Bankruptcy Code.  Without the Petitioning Creditors efforts in connection with this case, the assets of the Debtor would not be preserved for all creditors.  The Petitioning Creditors expenses are allowed as a priority claim as "[s]ection 503(b)(3)(A), in combination with 503(b)(4), grants creditors costs incurred in connection with filing an involuntary bankruptcy petition.  *See* 11 U.S.C. §§ 503(b)(3)(A)."  *In re Wind N' Wave* 509 F3d 938, 941 (9th Cir. 2007).  Moreover, the court in *In re Sedona Institute* held that that a creditor (or creditors) who provides a substantial benefit in a case need not incur an expense other than attorney's fees as a prerequisite to an award of such fees.  *See In re Sedona Institute*, 320 B.R. 74, 81 (B.A.P. 9th Cir. 1998).  Therefore, the Petitioning Creditors seek reimbursement of $350,000.00 of the $600,000.00 expended on services rendered for the Estates' benefit in connection with the filing of the involuntary Petitions against the Debtors.[3]

2.    **The Expenses Incurred by the Petitioning Creditors in Connection with their Substantial Contribution to the Debtors Estates Were Not Solely for the Benefit of the Petitioning Creditors**

In contrast to the situation presented in the instant case, courts routinely deny claims for administrative expenses made pursuant to 11 U.S.C. §§503(b)(3)(D) and (b)(4) where the expense at issue was incurred by a creditor solely for the benefit of the creditor.  *See, e.g.*, *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684 (Bankr. S.D. Cal. 1988).

Here, the Petitioning Creditors do not seek the allowance of an administrative claim on the basis of their general participation in the Debtors' case or for expenses incurred solely to protect

---

super-priority administrative expense claim for the repayment of the loan, to be repaid solely from the proceeds of the litigation, and shall be granted a super-priority administrative expense claim.

[3] The entry of the order for relief is the "cutoff point" to assert an administrative claim based on the commencement of an involuntary case.  Thus, a petitioning creditor cannot use § 503(b)(3) and therefore § 503(b)(4) as a basis for an administrative claim for expenses incurred after the order for relief.  *In re Hall*, 373 B.R. 788, 794-96 (Bankr. S.D. Ga. 2006); *In re Amanat*, 340 B.R. 713, 717 (Bankr. S.D.N.Y. 2006); *See also In re Schneider*, 2007 WL 2688812, at *3 (Bankr. N.D. Cal. 2007).  Here, the orders for relief were entered on December 23, 2008, and reimbursement for all services rendered were incurred prior to the filing of the Petitions up to the entry of the order of relief and appointment of the Trustee.  A copy of the relevant billing statements reflecting the Firms' costs incurred is attached hereto as Exhibit "1."

1   the Petitioning Creditors own interests.  Rather, in the instant case, the Petitioning Creditors

2   efforts yielded direct and tangible results culminating in a significant benefit in which the Debtors

3   Estates, to which all creditors are the beneficiaries. *See* Issa Decl., ¶ 3.   It is also important to note

4   that this is not a situation where the Petitioning Creditors have duplicated the actions of other

5   creditors in the Debtors cases.  *Id.*  As described earlier, the Petitioning Creditors singular efforts

6   yielded results from which the Debtors Estates and all creditors benefit.

7        **B.**     **<u>The Court Should Exercise its Discretion and Approve the</u>**

8              **<u>Compromise Offered by The Petitioning Creditors</u>**

9        By its own terms, Federal Rule of Bankruptcy Procedure 9019 commits the approval or

10  rejection of a compromise to the sound discretion of the Bankruptcy Court.  Federal Rule of

11  Bankruptcy Procedure 9019 provides that the Court may, upon motion by the trustee and after

12  notice and a hearing, approve a compromise or settlement.

13       Federal Rule of Bankruptcy Procedure 9019(a) provides:

14          On motion by the Trustee and after notice and a hearing, the court

15          may approve a compromise or settlement.  Notice shall be given to
        creditors, the United States Trustee, the debtor, and indenture

16          Trustees as provided in rule 2002 and to any other entity as the court
        may direct.

17  Fed. R. Bankr. P. 9019(a).

18  The bankruptcy court has great latitude in approving compromising agreements. *See In re A & C*

19  *Props.*, 784 F.2d 1377, 1380-81 (9th Cir. 1986).  In approving a settlement agreement, the court

20  must find that it is fair and equitable, and the product of good faith negotiations. *See id.*

21  Generally, the court may defer to a trustee's business judgment in deciding whether to settle a

22  matter. *See In re Mickey Thompson Entertainment Group, Inc.,* 292 B.R. 415, 420 (B.A.P. 9th

23  Cir. 2003).

24       In approving a compromise, a bankruptcy court must find that the compromise is fair and

25  equitable and that the negotiations between the parties were conducted in good faith. *See A & C*

26  *Properties,* 784 F.2d at 1380.  Nevertheless, the "bankruptcy court need not conduct an exhaustive

27  investigation into the validity of the asserted claim." *Matter of Walsh Const. Inc.*, 669 F.2d 1325,

28  1328 (9th Cir. 1982); *In re Schmitt,* 215 B.R. 417, 423 (B.A.P. 9th Cir.  1997) ("When assessing a

1    compromise, courts need not rule upon disputed facts and questions of law, but rather only

2    canvass the issues.  A mini trial on the merits is not required.").

3        Here, the Petitioning Creditors have agreed to greatly reduce their administrative claim for

4    expenses incurred in creating and preserving the Estates from $600,000.00 to $350,000.00 (the

5    "Compromise").  The Trustee submits that the Compromise embodies the business judgment of

6    the Trustee and was negotiated at arm's length.  *See* Issa Decl., ¶ 4.  Consequently, the Court

7    should exercise its discretion and approve the Compromise.

8        **C.    The Compromise Should be Approved under the Four Part Test**

9            **Governing Compromises**

10       Decisional law regarding the exercise of the court's discretion in determining whether a

11   compromise satisfies the reasonableness standard is "remarkably consistent in establishing that

12   there are but four considerations which a court must address."  *In re Grant Broadcasting of*

13   *Philadelphia*, 71 B.R. 309, 395 (E.D. Pa. 1987).  These considerations are:

14           (1)    the probability of success in the litigation;

15           (2)    the difficulties, if any, to be encountered in the matter of collection;

16           (3)    the complexity of the litigation involved, and the expense, inconvenience

17                  and delay necessarily attending it; and

18           (4)    the paramount interest of the creditors and a proper deference to their

19                  reasonable views in the premises.

20       Each of these factors militate in favor of the Compromise.  Moreover,  the Compromise is

21   fair and reasonable and in the best interests of the Debtors, their Estates, and their creditors.

22       The technical simplicity of the Compromise, *i.e.*, a significant reduction in the amount of

23   the Petitioning Creditors administrative claim, does not warrant an extensive analysis of the above

24   factors.  Nevertheless, the proposed Compromise is in the best interest of the Debtors' Estates

25   insofar as it will effectively eliminate litigation fees and expenses with the Petitioning Creditors.

26   Further, the Compromise represents a reduction of the Petitioning Creditors $600,000.00 claim,

27   and will consequently result in the release of a $250,000.00 administrative claim against the

28

1    Estates. *See* Issa Decl., ¶ 5.  Therefore, the Trustee contends that the proposed Compromise is

2    reasonable, fair, equitable, and in the best interests of the Debtors' Estates and their creditors.

3 **IV.**

4 __CONCLUSION__

5      Weiland Golden, Michaels, and Sills Cummis have provided valuable services as counsel

6    for the Petitioning Creditors which substantially benefited the bankruptcy Estates.  The fees and

7    expenses incurred by the firms total approximately $600,000.00 but the Petitioning Creditors have

8    agreed to accept $350,000.00 as payment in full for their administrative claim.

9      Based on the foregoing, the Trustee respectfully requests that this Court enter its Order as

10    follows:

11      1.     Providing that the Petitioning Creditors hold an allowed chapter 11 administrative

12    claim for their substantial contributions of the Estates the amount of $350,000.00;

13      2.     Providing that the Petitioning Creditors claim of $350,000.00 is entitled to

14    administrative priority pursuant to 11 U.S.C. §503(b)(3).

15      3.     Directing the Trustee to pay the $350,000.00 allowed chapter 11 administrative

16    priority claim to the Firms forthwith;

17      4.     Authorizing the Trustee to enter into the Agreement described in this Motion

18    pursuant to Federal Rule of Bankruptcy Procedure 9019; and

19      5.     For such other further relief as the Court deems just and proper.

20          Respectfully submitted,

21 DATED:  December 2, 2009     **WINTHROP COUCHOT**
         **PROFESSIONAL CORPORATION**

22

23      By: */s/ Richard H. Golubow*
         Richard H. Golubow

24          Payam Khodadadi
        General Insolvency Counsel for J. Michael Issa,

25        Chapter 11 Trustee

26

27

28

-14-